UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CHARLES H. KINDRED, JR., | ) | Case No. 6:08-bk-02334-KSJ |
| *Jointly Administered with* | ) | Case No. 6:08-bk-02331-KSJ |
| C&M CONSTRUCTION, INC., | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ROBERT E. THOMAS, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | Adversary No. 6:08-ap-171 |
| CHARLES H. KINDRED, JR. AND C&M | ) | *Consolidated for Trial with* |
| CONSTRUCTION, INC., | ) | Adversary No. 6:08-ap-119 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL MURPHY, BARRY BENNETT | ) | |
| and STANLEY WINES LAW FIRM, P.A., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION PARTIALLY GRANTING AND PARTIALLY DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Chapter 7 trustee in these related bankruptcy cases, Robert E. Thomas, brought this adversary proceeding against defendant Michael Murphy[1] originally seeking to recover assets under thirteen causes of action arising out of Murphy's dealings with the debtors, Charles H. Kindred and his company, C&M Construction, Inc. ("C&M"), and other associated limited liability companies. Murphy filed a motion for summary judgment,[2] and, at the hearing held on May 20, 2010, the trustee voluntarily dismissed all but Counts 3, 4, and 7 of his first amended complaint.[3] The trustee also made an *ore tenus* motion to amend Counts 3 and 4 of the amended

---

[1] The Court previously has dismissed with prejudice the trustee's claims against Murphy's Law firm, Stanley Wines Law Firm, P.A., and one of its attorneys, Barry Bennett. Doc. No. 31.
[2] Doc. No. 58. The trustee filed a response to Murphy's motion. Doc. No. 64.
[3] The Court will dismiss Counts 1, 2, 5, 6, 8-13 of the trustee's amended complaint, as requested.

complaint to convert those counts, originally claims of conversion and civil theft, into a single claim for breach of contract. Because leave to amend should be freely given and because Murphy will not suffer any significant prejudice by allowing the trustee to amend, the Court grants the trustee's *ore tenus* motion to amend Counts 3 and 4. As to the remaining Count 7 asserting that Murphy breached certain fiduciary duties, the Court will grant Murphy's motion for summary judgment because the trustee's allegations are not supported either factually or legally.

Years ago, Kindred and Murphy were friends. Murphy was an attorney; Kindred a sophisticated residential builder. They decided to work together in the residential construction business and formed three limited liability companies—Montana Construction, LLC, Cat & Mouse Investments, LLC ("Cat & Mouse"), and Auburndale Storage, LLC (collectively, the "LLCs"). Sadly, in early 2000, Kindred encountered serious health problems, leaving Murphy, as the sole managing member of the LLCs, to run the business. All of the trustee's broad allegations in this adversary proceeding arise from actions Murphy or his law firm took in connection with the assets or operation of C&M and the LLCs.

The remaining three counts (Counts 3, 4, and 7) asserted by the trustee in his amended complaint involve only two distinct transactions. Counts 3 and 4 revolve around allegations that Murphy took unauthorized salary "draws" from C&M in the aggregate amount of $129,081.01. As opposed to the conversion and civil theft allegations previously pled, the trustee, after conducting discovery, now seeks to assert a breach of contract claim to recover these monies. In Count 7, the trustee alleges that Murphy breached numerous fiduciary duties by allowing Cat & Mouse to default on mortgage payments for its principal office building (the "Property"), and then by buying the foreclosure judgment for the Property from Wachovia Bank, N.A., the secured creditor.

### The Trustee May Amend His Complaint to Assert a Breach of Contract Claim

The Court first will address the trustee's *ore tenus* motion to amend Counts 3 and 4 that allege, either through conversion or civil theft, Murphy wrote unauthorized checks from C&M's accounts to pay his own salary and other personal expenses. The trustee now seeks to amend the allegations to assert a breach of oral contract claim based on information he learned during discovery that the transfers to Murphy were actually loans. The key "new" facts are that the money transferred to Murphy was listed on C&M's 2003 and 2004 tax returns as an asset,[4] and also are characterized as an asset in C&M's accounting books.[5]

Federal Rule of Civil Procedure 15(a)(2), made applicable to bankruptcy proceedings by Bankruptcy Rule 7015(a)(2), gives courts broad discretion to "freely give leave [to amend pleadings] when justice so requires."[6] The purpose of Rule 15(a)(2) is to ensure that parties are not precluded from raising valid claims because they did not raise them in their original pleadings.[7] A party can amend pleadings once without the court's leave within twenty-one days of service, or within twenty-one days after receipt of the opposing parties' response.[8] Outside of these parameters, a party must request and be granted leave to amend.[9]

The Supreme Court has directed courts to allow parties to amend pleadings pursuant to Rule 15(a)(2) unless the moving party is acting abusively or the non-moving party will be prejudiced as a result of the amendment.[10] Unless one of these factors is present, courts should "freely" give leave to amend.[11] The Eleventh Circuit adopted the Supreme Court's interpretation of Rule 15(a)(2) in *Warner v. Alexander Grant & Co*, 828 F.2d 1528, 1531 (11th Cir. 1987).

---

[4] Doc. No. 54, Exh. C, D.
[5] Doc. No. 58, Exh. A–C.
[6] Fed. R. Civ. P. 15(a)(2).
[7] *Foman v. Davis*, 371 U.S. 178, 181–82 (1962).
[8] Fed. R. Civ. P. 15(a)(1)(A) & (B).
[9] Fed. R. Civ. P. 15(a)(2).
[10] *Foman*, 371 U.S. at 182.
[11] *Id.*

The trustee is not acting abusively by requesting to amend his complaint. The trustee was not a party to the underlying transactions and thus does not have any firsthand knowledge of them. He thus has relied solely upon discovery to learn relevant facts, and only recently discovered that C&M listed the money transfers as assets on its books and on its 2003 and 2004 tax returns. Moreover, the trustee has not asked for repeated amendments. Accordingly, the trustee is not acting abusive by requesting to amend his complaint when the trustee has discovered "new" facts that significantly alter the allegations of Counts 3 and 4.

Murphy's claims of prejudice also are vastly overblown. First, he argues that he had no timely notice of the trustee's contract claim. Second, he argues that, because Kindred died on May 10, 2010, he now cannot depose him in connection with the trustee's new allegations. Neither of these arguments is convincing.

Initially, the Court finds that Murphy cannot express genuine surprise at the trustee's new allegation of contractual breach insofar as the financial records giving rise to the claim were prepared when Murphy was in control of C&M. Indeed, Murphy's lawyers acknowledged that they themselves raised the "transfers were loans" argument as a defense to the trustee's conversion and civil theft claims and that C&M recorded the transfers to Murphy as assets, i.e., loans, on its 2003 and 2004 tax returns.[12] Murphy thus knew, or at least should have known, that the characterization of the nature of the transfers Murphy received was at issue from day one in the adversary proceeding. Murphy accordingly had notice of the potential for the breach of contract claim. He will suffer no prejudiced by allowing the trustee to amend the complaint.

Kindred's death also does not prejudice Murphy in defending against the trustee's new allegation. Although Murphy obviously cannot gather any further discovery from Kindred, Murphy has failed to establish why any further discovery is needed. Courts generally should be particularly mindful of the potential for prejudice when a belated amendment may limit a party's

---

[12] Doc. No. 58, p. 7, 17–18.

ability to conduct discovery.[13] However, in this case, Kindred never had any relevant information about these transfers, as he discussed during his deposition.[14] He testified that, at the time of the transfers, he was ill and unable to participate in the operation of the business.[15] Murphy was in control of C&M and its finances at the time. Murphy has complete knowledge of the circumstances surrounding the transfers and is fully able to defend himself against the trustee's breach of contract claim. Kindred's death thus does not prejudicially limit Murphy's ability to rebut the trustee's amended claim.

Therefore, because the standard for allowing amendments to pleadings is liberal and because allowing the trustee, who has not previously abused his request to amend pleadings, to file a second amended complaint will not prejudice Murphy, the Court will grant the trustee's *ore tenus* motion to amend Counts 3 and 4 to create a single breach of contract count. The trustee is directed to file a second amended complaint no later than **August 6, 2010**. Murphy shall file an answer to the second amended complaint by **August 27, 2010**. **The current pretrial conference set for August 12, 2010, is continued until 11 a.m. on September 23, 2010.** The Court further will deny Murphy's motion for summary judgment as to Counts 3 and 4, without prejudice, in light of the anticipated amendment.

Murphy Breached No Fiduciary Duty
in Buying the Property and is
Entitled to Summary Judgment on Count 7

The Court now turns to Murphy's motion for summary judgment on Count 7. Pursuant to Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The

---

[13] *Carruthers v. BSA Advertising*, Inc., 357 F.3d 1213, 1218 (11th Cir. 2004).
[14] Kindred Depo. 39-40.
[15] Doc. No. 49 (Kindred Depo.) pp. 24, 40–41.

moving party has the burden of establishing the right to summary judgment.[16] However, under Rule 56(e), the nonmoving party, in responding to a properly made motion for summary judgment, "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Conclusory allegations by either party, without specific supporting facts, have no probative value.[17]

In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[18] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[19] A material factual dispute thus precludes summary judgment.[20]

In 2001, C&M purchased the Property, where it had its principal offices in Auburndale, Florida. The purchase was financed with a loan by Florida First Bank, the predecessor in interest to Wachovia Bank, who properly recorded a mortgage encumbering the Property. Both Kindred and Murphy signed personal guarantees of the repayment of the loan. (C&M later transferred title to the Property to one of the LLCs, Cat & Mouse; however, C&M always remained liable for payments on the loan.)

In 2007, C&M/Cat & Mouse stopped making payments on the mortgage loan. Wachovia filed a foreclosure action, suing Kindred, Murphy, and C&M. On February 19, 2008, a summary final judgment of foreclosure was entered in Wachovia's favor for $184,403.39.[21] A few days

---

[16] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[17] *Evers v. General Motors Corp.* 770 F.2d 984, 986.
[18] *Scott v. Harris*, 550 U.S. 372, 380 (2007). (11th Cir. 1985).
[19] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*, 475 U.S. 572, 587 (1986).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[21] Doc. No. 57, Ex. "A".

later, on February 27, 2008, Murphy individually purchased an assignment of the final judgment for a slightly reduced amount—$182,500.[22] Murphy in effect purchased the Property now unencumbered by Wachovia's mortgage lien by paying Wachovia $182,500 for the foreclosure judgment. Murphy also avoided any further personal liability to Wachovia on his personal guaranty.

The trustee asserts that Murphy's purchase of the Property breached his fiduciary duties to Kindred, C&M, or Cat & Mouse in two ways. First, Murphy allegedly breached his fiduciary duty in his capacity as attorney for both Kindred and C&M and, as the sole managing member of Cat & Mouse, by failing to pay the mortgage payments starting on June 1, 2007. Second, Murphy allegedly breached his fiduciary duty, in his capacity as sole managing member of Cat & Mouse and in his capacity as attorney for Kindred, C&M, and Cat & Mouse, by improper self-dealing in purchasing the foreclosure judgment and Property from Wachovia. None of these arguments has any factual or legal basis, and Murphy is entitled to summary judgment on Count 7.

Murphy breached no duty in failing to make the mortgage payments to Wachovia. The deposition testimony of Kindred, Murphy, and C&M's bookkeeper, Amy Brown, each unequivocally confirmed that, in 2007, when the mortgage payments stopped, Murphy was no longer in control of C&M or Cat & Mouse. Kindred already had forcibly removed Murphy from control of the business in either December 2004 or January 2005.[23] Kindred testified at his deposition that he had his son tell Murphy to leave C&M's office and that he ceased doing business with Murphy altogether after that time.[24] Murphy had no access to Cat & Mouse's financial records or accounts anytime after January 2005. Rather, Murphy sued Kindred to dissolve the jointly owned LLCs precisely because he was ousted from control and because the

---

[22] Doc. No. 56, Ex. "1"-b.
[23] Kindred Depo. 39: 18-25; 40: 1-12; 41: 1-7; Murphy Depo. 76-77; Brown Depo. 52: 1-2; 80-82.
[24] Kindred Depo. 39: 18-25; 40: 1-12; 41: 1-7.

two men were unable to agree to a distribution of the companies' assets. From January 2005 forward, Kindred and Murphy were no longer amiable business partners but, instead, were litigation adversaries.

Even assuming Murphy legally was still acting as the sole managing member of Cat & Mouse in June 2007, nothing in the Cat & Mouse operating agreement required Murphy to contribute more capital or to make mortgage payments if the company had insufficient funds.[25] Paragraph 8.2 of the operating agreement specifies that "[t]here shall be no additional capital contributions to the capital of the Company unless otherwise agreed to in writing by all the Members…"[26] Neither the amended complaint nor the trustee's response to Murphy's motion for summary judgment contains any allegation that Murphy failed to make mortgage payments when the company had money available. So, although Murphy legally was designated the sole managing member of Cat & Mouse in 2002, and perhaps facially (if not actually) continued in that role until mortgage payments stopped in June 2007, the trustee has failed to demonstrate why Murphy was required to make mortgage payments *when the company had no funds to do so.*

Murphy also was not required to make mortgage payments on the Property simply because he at one time acted as attorney for both Kindred and C&M. Attorneys simply have no obligation to pay their client's bills. In sum, the trustee's theory that Murphy was required to make mortgage payments on the Property is completely unsupported by either facts or law.

Also unsupported is the trustee's allegation that Murphy, in his capacity as sole managing member of Cat & Mouse, breached his fiduciary duty to the company by self-dealing when he bought the mortgage foreclosure judgment from Wachovia. Under Florida Stat. § 608.4225, a managing member of a limited liability company owes a duty of loyalty and a duty of care to the company and its members. The statute limits the duty of loyalty to three categories of prohibited

---

[25] Doc. No. 55, Ex. 5. (Cat & Mouse Operating Agreement, ¶ 8.2.)
[26] *Id*.

conduct, which include classic self-dealing transactions.[27] A self-dealing transaction typically involves a manager acting on both sides of a transaction involving the managed company. Clearly, in such circumstances, the risk of a sweetheart deal at a company's expense, and at a manager's gain, is great, and therefore prohibited.

The trustee has not shown any facts to support his self-dealing claim. To the contrary, the facts show that Murphy was *not* on both sides of any transaction. Although Murphy admits he was a member of Cat & Mouse at the time,[28] Murphy did not act in that capacity or even negotiate with Cat & Mouse when he purchased the mortgage foreclosure judgment from Wachovia. Murphy acted in his individual capacity when he paid his own monies to buy the judgment. He was personally liable to Wachovia on his guaranty and negotiated directly with representatives of Wachovia. He understandably wanted to reduce his individual financial risk to the bank, as a guarantor of the mortgage note. He thus was not acting in the capacity of managing member of Cat & Mouse and did not negotiate with Cat & Mouse. As such, Murphy did not engage in a self-dealing transaction and did not breach a fiduciary duty to Cat & Mouse.

Finally, the trustee's theory that Murphy breached his fiduciary duty not to self-deal in his capacity as attorney for Kindred, C&M, and Cat & Mouse also is not supported by any facts or law. Even stretching credibility and assuming Murphy was at times still acting as Kindred's or the companies' attorney at the time he bought the foreclosure judgment, the trustee has not alleged any facts that would support his argument that Murphy was self-dealing. When he purchased the judgment, Murphy simply was not acting on behalf of Kindred or the companies. He was acting on behalf of himself and was negotiating with a third party—Wachovia Bank.

---

[27] Fla. Stat. § 608.4225(a)1-3.
[28] Murphy Depo. 66: 5-8.

In sum, none of the trustee's arguments for breach of fiduciary duty under Count 7 is supported by the facts in this case.  The Court will grant summary judgment in favor of Murphy and against the trustee on Count 7.  Accordingly, the only count remaining ripe for resolution in this adversary proceeding is the one count for breach of contract the trustee will frame in his second amended complaint.

A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on July 16, 2010.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Plaintiff:  Robert E. Thomas, PO Box 5075, Winter Park, FL  32793-5075

Counsel for Plaintiff:  Frank M. Wolff, Wolff Hill McFarlin & Herron PA, 1851 W. Colonial Drive, Orlando, FL  32804

Defendant:  Michael Murphy, PO Box 3580, Winter Haven, FL  33885

Counsel for Defendant:  Andrea Teves Smith, Peterson & Myers, PA, PO Box 24628, Lakeland, FL  33802-4628

Defendant:  Stanley Wines Law Firm PA, PO Box 860, Winter Haven, FL  33880

Defendant:  Barry Bennett, 106 Avenue F, SW, Winter Happen, FL  33880

Counsel for Defendants:  Vincent S. Gannuscio, Cole Scott & Kissane PA, 5201 W. Kennedy Blvd., Suite 750, Tampa, FL  33611